UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN H. HERSCHFUS and BRIAN H.
HERSCHFUS AND FERN SHARI
HERSCHFUS JOINT REVOCABLE
TRUST,

          Plaintiffs,

v.

CITY OF OAK PARK, et al.,

          Defendants.

_____/

Case No. 2:22-cv-11174

HONORABLE STEPHEN J. MURPHY, III

**OPINION & ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT [19] AND
<u>DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT [20]</u>**

Plaintiffs Brian Herschfus and Brian H. Herschfus & Fern Shari Herschfus Joint Revocable Trust (Trust) sued Defendants City of Oak Park (City), City Manager Erik Tungate, Director of Municipal Services Robert Barrett, and John or Jane Doe and alleged that Defendants forced Plaintiffs "to consent to warrantless searches of their property in violation of the [Fourth] Amendment . . . in order to obtain a Certificate of Compliance." ECF 1, PgID 2 (alterations omitted). Defendants moved for summary judgment. ECF 19. Plaintiffs moved for partial summary judgment. ECF 20. For the following reasons, the Court will grant Defendants' motion for summary judgment, deny Plaintiffs' motion for partial summary judgment, and close the case.

1

## BACKGROUND

I.   <u>City Ordinances</u>

The City adopted the international property maintenance code (IPMC) as its code of maintenance in 1996. ECF 1, PgID 71–74. The City also enacted ordinances that require owners of single-family or two-family rental properties to obtain a Certificate of Compliance from the City before renting the buildings. *Id.* at 80 (Oak Park, Michigan, Municipal Code § 18-181) ("No owner of any rental unit governed by this article, and no agent of such owner, shall hereafter offer to let or hire, any one-family dwelling or any unit in a two-family dwelling, unless such unit has been inspected and a certificate of compliance has been issued by the department of technical and planning services."). The purpose of the compliance requirement is "to protect the public health, safety and welfare of people in residential buildings to be occupied or reoccupied due to rental or lease agreements." ECF 19-7, PgID 249 (Oak Park, Michigan, Municipal Code § 18-164). Michigan law empowers cities to adopt codes pertaining to building safety. *See* Mich. Comp. Laws § 117.3(K).

To obtaining a Certificate of Compliance, the property owner must agree to allow his or her rental properties to undergo an inspection by the Department of Technical & Planning Services. ECF 19-7, PgID 251 (Oak Park, Michigan, Municipal Code § 18-168). The Department must "request and receive consent from the lessee to enter a unit and perform an inspection." *Id.* at 252 (Oak Park, Michigan, Municipal Code § 18-182(a)(2).

But the code contains certain exceptions to the consent requirement. For instance, the property owner must provide the Department access to common or public areas regardless of the lessee's consent. *Id.* (Oak Park, Michigan, Municipal Code § 18-182(a)(4)). The property owner must provide access to a rental unit if either (1) "[t]he lease authorizes an . . . inspector to enter the rental unit for an inspection," (2) "[t]he lessee has made a complaint to the city," (3) "[t]he rental unit is vacant," (4) "[t]he department of municipal services serves an administrative warrant . . . ordering the owner to provide access to the rental unit," or (5) "[t]he lessee has consented to an inspection." *Id.* at 252–53 (Oak Park, Michigan, Municipal Code § 18-182(a)(5)). And the Department "shall obtain a warrant" for an inspection "where the owner or occupant of the rental unit demands a warrant for the inspection," absent emergency circumstances. *Id.* at 254 (Oak Park, Michigan, Municipal Code § 18-183).

Without an inspection and Certificate of Compliance, a rental property cannot be rented or occupied. *Id.* at 254 (Oak Park, Michigan, Municipal Code § 18-184(a)). Failure to comply with the inspection requirement may lead to civil infractions. ECF 19-8, PgID 260–61 (Oak Park, Michigan, Municipal Code of Ordinances, Chapter 3, Section 3-2). Three civil infractions make a person "guilty of a misdemeanor." *Id.* at 262 (Oak Park, Michigan, Municipal Code of Ordinances, Chapter 3, Section 3-4(a)(3)).

Section 111 of the IPMC allows rental property owners to challenge compliance decisions by the City through a written appeals process. ECF 28, PgID 989–90 (Oak

3

Park, Michigan, Municipal Code § 18-211−213(b)) (citing IPMC § 111.1). Accordingly, "[t]he City's current procedure is to advise the owner of the property on the violation notice of the right to appeal to the Building Board of Appeals in accordance with Section 111 of the International Property Maintenance Code." *Id.* at 946. In accordance with the IPMC, the City has an appeals board that consists of five members, none of whom are City employees. ECF 19-1, PgID 228. After the appeals board issues a decision, the party has twenty days to appeal the decision to circuit court. ECF 28, PgID 990−91.

II.   Factual Background

Plaintiffs own four residential properties in Oak Park, Michigan. ECF 1, PgID 5. The City sent letters to Plaintiffs in 2020 and requested that they re-register three of their properties with the City—22720 Rosewood Ave, 10621 Corning Ave, and 24320 Cloverlawn Ave. ECF 1, PgID 31, 35.

Plaintiff Herschfus went to the City to complete the registration process, but he objected to the registration form that stated: "I hereby give consent to the Technical and Planning Department to enter any of the listed premises, if necessary at reasonable times, to inspect such premises when the property is vacant." ECF 28, PgID 1028; ECF 1, PgID 31−32. Plaintiff therefore did not re-register the properties. ECF 1, PgID 32. To date, none of Plaintiffs' properties have been registered or obtained an updated Certificate of Compliance. ECF 19, PgID 204–06.

The City then issued a civil infraction ticket to Plaintiffs for the property at 24320 Cloverlawn "for continuing to offer the property at 24320 Cloverlawn without

4

a rental certificate of compliance." ECF 19-1, PgID 229; *see also* ECF 28, PgID 1107 (infraction notice stating reason for infraction as "renting no cert" under Oak Park, Michigan, Municipal Code § 18-181). The City issued a second infraction for that same property over a year later. ECF 19-1, PgID 229. The City then sent a notice to Plaintiffs that "they were renting the property at 24320 Cloverlawn in violation of section 501.2 of the [IPMC] because water service had been terminated due to non-payment." *Id.* at 230. The City has not, to date, "searched or conducted any interior rental inspections . . . without a warrant or without consent" at 24320 Cloverlawn. *Id.* And other than issuing the infractions, the City has not "taken any action to prevent [] Plaintiffs from continuing to rent" 24320 Cloverlawn. *Id.*

The City issued a civil infraction ticket to Plaintiffs for the property at 10621 Corning Ave "for renting 10621 Corning Ave[] with no rental certificate of compliance." *Id.* at 231; *see also* ECF 28, PgID 1030 (infraction notice stating reason for infraction as "renting no cert" under Oak Park, Michigan, Municipal Code § 18-181). The City issued a second infraction a year later for the same reason. ECF 19-1, PgID 231; *see also* ECF 28, PgID 1032 (infraction notice stating reason for infraction as "renting without cert" under Oak Park, Michigan, Municipal Code § 18-181 and instructing Plaintiffs to "please register and get house inspected"). Then, in March of 2022, the City issued a third-offense misdemeanor ticket to Plaintiffs for the same reason. ECF 19-1, PgID 231; *see also* ECF 28, PgID 1108 (misdemeanor notice stating reason for infraction as "renting no cert"). A month later, the City also sent a notice to Plaintiffs that it "received a health and safety complaint about a sewage backup at

5

10621 Corning." ECF 19-1, PgID 231. The City has not, to date, "searched or conducted any interior rental inspections . . . without a warrant or without consent" at 10621 Corning Ave. *Id.* And other than issuing the infractions, the City has not "taken any action to prevent [] Plaintiffs from continuing to rent" 10621 Corning Ave. *Id.*

Similarly, the City issued a civil infraction ticket to Plaintiffs for the property at 22720 Rosewood "for renting 22720 Rosewood with no rental certificate of compliance." *Id.* at 232; *see also* ECF 28, PgID 1031 (infraction notice stating reason for infraction as "renting no cert" under Oak Park, Michigan, Municipal Code § 18-181). The City issued a second notice approximately a year later. ECF 28, PgID 1033 (infraction notice stating reason for infraction as "renting no cert" under Oak Park, Michigan, Municipal Code § 18-181 and instructing Plaintiffs to "please register and get house inspected"). The City issued a third-offense misdemeanor ticket in March of 2022. ECF 19-1, PgID 232; *see also* ECF 28, PgID 1109 (misdemeanor notice stating reason for infraction as "renting no cert"). The City has not, to date, "searched or conducted any interior rental inspections . . . without a warrant or without consent" at 22720 Rosewood. ECF 19-1, PgID 233. And other than issuing the infractions, the City has not "taken any action to prevent [] Plaintiffs from continuing to rent" 22720 Rosewood. *Id.*

The City "has never obtained an administrative warrant for [] Plaintiffs' properties." *Id.* at 233.

III.   Procedural History

Plaintiffs filed an eight-count complaint and alleged that the code provisions that allowed the Department to search their properties were unconstitutional. ECF 1. In Count I, Plaintiffs requested declaratory relief that the City's registration and inspection code sections are unconstitutional under the Fourth Amendment, the Fourteenth Amendment's Equal Protection Clause, and several provisions of the Michigan Constitution. *Id.* at 37–40. In Count II, Plaintiffs requested that the Court issue an injunction "stopping Defendants from their illegal and unconstitutional practices." *Id.* at 41. In Count III, Plaintiffs alleged that Defendants, acting under color of State law, violated 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments. *Id.* at 42–46. In Count IV, Plaintiffs alleged that Defendants violated Plaintiffs' due process rights by "fail[ing] to notify [Plaintiffs] of [their] constitutional right to appeal the code official's interpretation of the IPMC." *Id.* at 49. In Count V, Plaintiffs alleged that Defendants violated Plaintiffs' due process rights by depriving them of their Fourth Amendment right to be free of an unreasonable, warrantless search or, alternatively, for depriving them of their right to use their property. *Id.* at 50–532 (citing *Camara v. Municipal Court of the City and County of San Francisco*, 387 U.S. 523 (1967). In Count VI, Plaintiffs alleged that Defendants were unjustly enriched by "extracting fees and/or penalties from Plaintiffs by denying Plaintiffs' procedural due process rights and by conduct the illegal . . . [s]cheme as set forth above." *Id.* at 54. In Count VII, Plaintiffs alleged municipal liability against the City for violating Plaintiffs' constitutional rights. *Id.* at 54–57. Last, in Count VIII,

Plaintiffs sought to certify a class of persons who suffered the same alleged constitutional violations. *Id.* at 59.

Defendants moved for summary judgment. ECF 19. And Plaintiffs moved for partial summary judgment. ECF 20. For the reasons below the Court will grant Defendant's motion for summary judgment and deny Plaintiff's motion for partial summary judgment.

## LEGAL STANDARD

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When it considers a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the

light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

The Court will grant Defendant's motion for summary judgment for two reasons. First, Plaintiffs lack standing to bring a fourth amendment claim because the properties were not searched. And second, Plaintiffs cannot succeed on their remaining claims because the challenged ordinance is constitutional.

### I.    Standing (Count III)

First, Plaintiffs lack standing to bring a Fourth Amendment claim as to a warrantless inspection. Defendants argued that Plaintiffs lacked standing to bring a Fourth Amendment challenge to the City's ordinances (Count III) because Defendants never inspected Plaintiffs' properties without a warrant. ECF 19, PgID 208 (citing *Lujan v Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (requiring standing for jurisdiction)).

The Court agrees. It is undisputed that the City has not, to date, "searched or conducted any interior rental inspections . . . without a warrant or without consent" on any of Plaintiffs' properties. ECF 19-1, PgID 230–33. And courts in the Sixth Circuit have repeatedly found, in analogous cases involving challenges to the constitutionality of a town inspection requirement for rental properties, that plaintiffs lacked standing to bring a Fourth Amendment claim if no inspection actually occurred because they did not suffer an injury in fact. *See, e.g., Vonderhaar v. Vill. Of Evendale, Ohio,* 906 F.3d 397, 401 (6th Cir. 2018); *Harris v. Akron Dep't of*

*Pub. Health*, 10 F. App'x 316, 319 (6th Cir. 2001) (finding that plaintiffs lacked standing because they "provided no evidence of any warrantless inspection carried out in the absence of both consent and emergency conditions."); *see also Flynn v. City of Lincoln Park*, 2020 WL 344854, at *4 (E.D. Mich. Jan. 21, 2020) (citation omitted); *Investment Realty Services, LLC v. City of Garden City*, No. 19-10198, 2019 WL 4017142, at *7 (E.D. Mich. Aug. 26, 2019). Because no search occurred, Plaintiffs did not suffer an injury in fact and lack standing to bring their Fourth Amendment claim. *See Lujan*, 504 U.S. at 560; *see also Clapper v. Amnesty Int'l USA*, 468 U.S. 398, 409 (2013) (noting that a complaint alleging only "possible future injury" does not meet the standing requirement).

Plaintiffs argued that they have standing to assert a Fourth Amendment claim because the City conducted exterior inspections of [Plaintiffs'] properties," as evidenced by a blight notice Plaintiffs received. ECF 28, PgID 1227. The blight notice explained that Plaintiffs' property at 10621 Corning Ave "was inspected and found to be in violation of the City property maintenance code." *Id.* Plaintiffs claimed that "the inspector *had to have* trespassed on [the property] without a warrant." *Id.* at 916 (emphasis added). But the Sixth Circuit has held that an individual does not have an expectation of privacy in the exterior of a home openly visible to members of the public. *Widgren v. Maple Grove Tp.*, 429 F.3d 575, 582–83 (6th Cir. 2005). And Plaintiffs offered no evidence from which to infer that the City did anything other than inspect the exterior of the home. *See* ECF 28. Since the Fourth Amendment does not require the City to obtain a warrant to view the exterior of the home, Plaintiffs'

argument fails. *See id.* Plaintiffs have no Fourth Amendment injury and lack standing.

Accordingly, the Court will grant Defendants' motion for summary judgment as to their Fourth Amendment claim. The Court will also deny Plaintiffs' motion for partial summary judgment as to the Fourth Amendment arguments in their motion.

## II.    Procedural Due Process (Counts IV and V)

Plaintiffs claimed in Count V that the City deprived them of their Fourth Amendment right to be free of unreasonable search or alternatively of their "protected property interest in using, renting, occupying, leasing and/or selling their property." ECF 1, PgID 51.[1] And Plaintiffs claimed in Count IV that the City deprived them of their due process rights by failing to notify them of their "constitutional right to appeal the code official's interpretation of the IPMC." *Id.* at 49. But Plaintiffs' due process claims fail because Plaintiffs were afforded adequate notice and opportunity to be heard, as required by the Fourteenth Amendment.

The Fourteenth Amendment provides that no person may be deprived of life, liberty, or property without due process of law. U.S. Const., Amend. XIV. "Due process

---

[1] Defendant argued Plaintiffs' substantive due process claim is improper. ECF 19, PgID 214. Yet Plaintiffs did not explicitly state that they were bringing a substantive due process claim. *See* ECF 1, PgID 51–53. To the extent Plaintiffs' due process allegations in Count V can be construed as a substantive due process claim, a substantive due process claim is not available if Plaintiffs can assert "an explicit textual source of constitutional protection." *MS Rentals, LLC v. City of Detroit*, 362 F. Supp. 3d 404, 414 (E.D. Mich. 2019). And Plaintiffs offered no support for their due process claims in Count V other than the same Fourth Amendment claim brought earlier in Count V. *See* ECF 1, PgID 52. Thus, the due process claims in Count V are "encompassed by the Fourth Amendment." *Flynn*, 2020 WL 344854, at *8. Plaintiff may not proceed on a substantive due process theory.

requires notice of the charges and a meaningful opportunity to contest the evidence." *Morrison v. Warren*, 375 F.3d 468, 473 (6th Cir. 2004) (citation omitted). A plaintiff may pursue a procedural due process claim under § 1983 by establishing the following: (1) a life, liberty, or property interest protected by the due process clause; (2) deprivation of that interest; and (3) that adequate procedural rights were not afforded by the Government actor prior to deprivation of the interest. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999) (citation omitted). "[T]he Supreme Court has held that the hallmark of due process is that a deprivation of a property interest must be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 901 (6th Cir. 2019) (quotation marks and quotation omitted).

The challenged ordinance provided adequate notice and opportunity. "[I]t is beyond all dispute that local municipalities are empowered to regulate land use in order to maintain or improve the quality of life within their communities." *15192 Thirteen Mile Road, Inc. v. City of Warren*, 626 F. Supp. 803, 823 (E.D. Mich. 1985) (citations omitted). That power extends to rental property inspection requirements. For example, courts in this district have upheld requirements that required rental property owners to submit to an inspection of their properties before obtaining a Certificate of Compliance—or be penalized for failure to obtain such a certificate. *See, e.g., MS Rentals, LLC v. City of Detroit*, 362 F. Supp. 3d 404, 413 (E.D. Mich. 2019) (explaining that the "requirement that landlords demonstrate compliance before being allowed to rent the property to tenants" is lawful); *Halpern 2012, LLC v. City*

*of Ctr. Line*, 404 F. Supp. 3d 1109, 1119 (E.D. Mich. 2019) ("[The City] requires rental properties to meet the [City's] habitability standards, and the landlord must demonstrate compliance through an initial inspection. And there is nothing wrong with that.").

The policies, however, are not without limits. Indeed, the regulations must still comply with constitutional due process requirements. For instance, the Supreme Court held policies that give rental property owners the choice of either consenting to a warrantless inspection or facing criminal charges unconstitutional because they lacked an opportunity for pre-compliance review. *Camara*, 387 U.S. at 532; *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 420−21 (2015). While the Supreme Court has not explicitly said what "form a pre[-]compliance review must take, at a minimum such review requires a neutral decisionmaker." *Inv. Realty Servs.*, 2020 WL 230272, at *7. Following suit, courts in the Sixth Circuit have found unconstitutional inspection policies that "afford[ed] no warrant procedure or other mechanism for pre[-] ] compliance review." *Baker v. City of Portsmouth*, No. 1:14-cv-5L2, 2015 WL 5822659, at *5 (S.D. Ohio Oct. 1, 2015); *see also Inv. Realty Servs.*, 2020 WL 230272, at *5 (granting relief to a plaintiff because Allen Park, Michigan's ordinances "authorize[d] administrative searches without affording landlords or property owners an opportunity to seek pre[-]compliance review"). Thus, whether the City's rental inspection ordinances violated procedural due process in the present case depends on

whether they afforded rental property owners with the opportunity to obtain review before an inspection was conducted or an infraction issued.

The City's ordinances do so. To be sure, the ordinances require rental property owners to obtain a Certificate of Compliance—which requires an inspection—before renting their properties to the public. *See* Oak Park, Michigan, Municipal Code § 18-181; § 18-182(a). And they expressly provide that failure to comply with the inspection requirement may lead to civil infractions. Oak Park, Michigan, Municipal Code § 3-4. Yet unlike the policies in *Baker* and *Investment Realty Services*, the City's ordinances do not omit a warrant procedure or other pre-compliance mechanisms. Put differently, the City's ordinances do not force property owners to choose between "consenting to warrantless inspections or facing criminal and financial penalties," *Halpern*, 404 F. Supp. 3d at 1118, or make them automatically "guilty of a misdemeanor," *Investment Realty Services*, 2020 WL 230272, at *2; *see also Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 282 (6th Cir. 2018) (invalidating a code ordinance that made refusal to consent to an inspection immediately punishable by a misdemeanor without any intermediate steps). Rather, the code provides several pre-compliance review mechanisms.

For instance, the code provides that the Department must "request and receive consent from the lessee to enter a unit and perform an inspection." Oak Park, Michigan, Municipal Code § 18-182(a)(2). The code also provides that the City "shall"

obtain a warrant if "the owner or occupant of the rental unit demands a warrant for the inspection." Oak Park, Michigan, Municipal Code § 18-183.

Similarly, the code provides rental property owners, in accordance with the IPMC, with a written appeals process through which they can challenge the City's decisions before a neutral appeals board composed of non-City employees. *See* Oak Park, Michigan, Municipal Code § 18-231. And property owners like Plaintiffs can contest any infractions issued by the City, and—crucially—they can do so *before* complying with the City's request to inspect the property at issue. Indeed, the notices of civil infractions issued by the City informed Plaintiffs of the date by which they had to make an appearance if they intended to challenge the infractions. *See* ECF 28, PgID 1030–33, 1107–09. Thus, the City's ordinances avoid doing what has previously been held invalid: the authorization of warrantless searches without an opportunity for pre-compliance review. *See Investment Realty Services*, 2020 WL 230272, at *2 (finding a code inspection requirement invalid because it did not contain an appeals process); *Patel*, 135 S. Ct. at 2452 (holding that pre-compliance review, at minimum, requires a neutral decisionmaker). Because pre-compliance review is available, the City's ordinances do not violate Plaintiff's procedural due process rights. And because Plaintiffs presented no evidence to the contrary, no genuine issue of material fact exists.

Plaintiff nonetheless argued that the City's ordinances deprived them of their due process rights by failing to "notify the Homeowner that the City may lien his property for failing to comply," failing to "provide a reasonable time period in which

to correct the alleged deficiencies," and issuing "fines, fees, and levies to [h]omeowners without completing these conditions precedent." *Id.* at 49. For the following reasons, none of Plaintiff's arguments succeed.

As to Plaintiffs' first argument, it is true that the infraction notices do not mention the possibility of a lien. *See* ECF 28, PgID 1030–33, 1107–09. Plaintiffs, however, provided no evidence that the City placed a lien on the property. *See* ECF 1, 19, 26, 29. Without such evidence, no issue of material fact exists because a reasonable jury could not find that the City placed a lien on Plaintiff's property without any evidence. *See Anderson*, 477 U.S. at 248. Plaintiffs' argument thus fails.

Plaintiffs' second argument is also unpersuasive because the City did not fail to "provide a reasonable time period in which to correct the alleged deficiencies." ECF 1, PgID 49. While the code does not specify what constitutes a reasonable time, the IPMC—which the City adopted—requires the City to "allow[] a reasonable time to make the repairs and improvements required to bring the dwelling unit or structure into compliance." ECF 28, PgID 1089 (alterations omitted). And the City gave Plaintiffs approximately a full year between each notice. *See* ECF 28, PgID 1030, 1032, 1108 (10621 Corning property); *id.* at 1031, 1033, 1109 (22720 Rosewood property).[2] A year is certainly sufficient time in which to schedule an inspection or

---

[2] "Where the facts are clear," what constitutes a reasonable time "is always a question exclusively for the court." *Hamilton v. Phoenix Ins. Co. of Hartford*, 61 F. 379, 390 (6th Cir. 1894).

file an appearance to challenge the infraction. The City therefore did not fail to provide Plaintiffs with a reasonable time to comply.

Last, the Court will disregard Plaintiffs' third argument because the City did not issue "fines, fees, and levies to [h]omeowners without completing these conditions precedent." ECF 1, PgID 49. As noted above, the City provided adequate procedural safeguards and notified Plaintiffs of their opportunity to contest the civil infractions.

In sum, the ordinances afforded adequate notice and opportunity to be heard. Defendants are entitled to summary judgment on Plaintiffs' due process claims.

III.   <u>Fifth Amendment (Count III)</u>

While the scattered portions of the complaint are difficult to parse, Plaintiffs briefly mentioned the Fifth Amendment in Count III: "[T]hrough the other actions described in this Complaint, Defendants . . . disregarded [Plaintiffs'] constitutional rights including those conferred under the 4th and/or 5th Amendments." ECF 1, PgID 43–44. Construing the facts in the light most favorable to Plaintiffs, *60 Ivy St. Corp.*, 822 F.2d at 1435—and in the interest of completeness—the Court will address the claim.

The Takings Clause of the Fifth Amendment provides, in relevant part: "[N]or shall private property be taken for public use, without just compensation." U.S. Const., Amend. V. Put another way, the Takings Clause "bars the State from taking private property without paying for it." *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 715 (2010) (emphasis omitted); *see also Peters v. Fair*, 427 F.3d 1035, 1037 (6th Cir. 2005). To the extent Plaintiffs bring a Fifth

17

Amendment takings claim, the claim must fail. Simply put, Plaintiffs presented no evidence that the City prevented them from renting their properties. *See* ECF 1, 20. Indeed, aside from issuing the civil infractions under the code, the City has not taken any steps to prevent Plaintiff Herschfus from renting his properties. *See, e.g.*, ECF 19-1, PgID 232. And Plaintiff certainly provided no evidence that the City took his real property for public use.

What is more, the City's ordinances—including the ordinances allowing the City to penalize property owners for not agreeing to an inspection—are lawful. The City has the authority to regulate land and may impose fines for violating its ordinances. *15192 Thirteen Mile Road*, 626 F. Supp. at 823; *MS Rentals*, 362 F. Supp. 3d at 413; *Halpern*, 404 F. Supp. 3d at 1119. And Plaintiffs repeatedly violated those ordinances by leasing their properties without a certificate of compliance—which they do not deny. Issuing civil infractions to Plaintiffs for their noncompliance therefore fell within the City's lawful regulatory authority and did not violate the Fifth Amendment. *See, e.g., MS Rentals*, 362 F. Supp. 3d at 413. The Court will grant summary judgment on Plaintiffs' Fifth Amendment claim.

## IV.   Equal Protection (Count III)

Plaintiffs also asserted an equal protection claim in Count III. *See* ECF 1, PgID 43 (claiming that the "constitutional right to be treated equal to non-landlord homeowners."). In their motion for partial summary judgment, Plaintiffs argued that the City's ordinances violated the Equal Protection Clause of the Fourteenth Amendment because they treat owners of one-family and two-family properties

18

different than owners of multi-family properties. ECF 20, PgID 333–36. And Plaintiffs claimed that such "singling out of single-family and two-family rental dwellings . . . is neither necessary, nor rationally related, to a legitimate government purpose" and therefore "violates Plaintiffs' right to equal protection of the law." *Id.* at 336.

To establish an equal protection violation, Plaintiffs must prove that they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quotation marks and quotation omitted). And to meet that standard, Plaintiffs must show that there was no "conceivable basis" for the ordinances. *Rapp v. Dutcher*, 557 Fed. Appx. 444, 450 (6th Cir. Feb. 18, 2014) (quotation marks and quotation omitted).

Plaintiffs cannot prove that they were treated differently than others who are similarly situated to them. *See Olech*, 528 U.S. at 564. Plaintiffs offered no facts to show that they were treated differently from any other residential landlords in the City. *See* ECF 19. And they failed to cite a single portion of the code to show that the City does not apply the inspection requirement uniformly. *See id.* at 333–36.

Even if Plaintiffs could prove that they were treated differently, they cannot prove that "there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564. The City established a conceivable basis for the inspection requirement: public health and safety. *See* ECF 19-7, PgID 249 (Oak Park, Michigan, Municipal Code § 18-164) (noting that the purpose of the requirement is "to protect the public health,

safety and welfare of people in *all residential buildings* to be occupied or reoccupied *due to rental or lease agreements*") (emphases added). Notably, the ordinance provides that the basis for the inspection requirement applies to "all" residential buildings to be occupied "due to rental or lease agreements." *Id.*

What is more, municipalities are generally permitted to "protect the public health, safety[,] and welfare by establishing minimum standards governing the state of repair and rental dwellings." *151192 Thirteen Mile Road,* 626 F. Supp. at 823. And Plaintiffs offered no evidence that the City's basis for the inspection requirement—or its application to some types of dwellings and not others—was inconceivable or unwarranted. *See* ECF 1, 20. And the City's Code Officer Toni Christofel explained that the inspection requirement applies to "*every* rental property that is operated within the City." ECF 22-1, PgID 457 (emphasis added); *see also* ECF 29, PgID 1280 ("The City's ordinance is applicable to *all residential buildings to be occupied or reoccupied due to rental or lease agreements*."). Thus, even if Plaintiffs could establish that they were treated differently than others who are similarly situated to them, their equal protection claim would fail because they cannot prove that there was no rational basis for the difference in treatment.

In sum, Defendants are entitled to summary judgment on Plaintiffs' equal protection claims. The Court will therefore deny Plaintiffs' motion for partial summary judgment on their equal protection claim and grant Defendant's motion for summary judgment on Plaintiffs' equal protection claim.

V.      Unjust Enrichment (Count VI)

Plaintiffs alleged that "extracting fees and/or penalties from Plaintiffs by denying Plaintiffs' procedural due process rights and by conduct the illegal . . . [s]cheme as set forth above" unjustly enriched Defendants. ECF 1, PgID 54. Unjust enrichment is a State-law claim. A plaintiff must establish "(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 375 (1993).

The Court will grant Defendant's motion for summary judgment as to Plaintiffs' unjust enrichment claim. As noted above, the City's ordinances did not violate due process, and assessing a fine for failure to comply with the code is lawful. *MS Rentals*, 362 F. Supp. 3d at 413. To say otherwise would lead to absurd results: any fine imposed on any individual for disobeying the law would constitute unjust enrichment. And Plaintiffs simply claimed, without explanation or support, that the City has been unjustly enriched. *Id.* Because Defendants showed that there is no genuine issue of material fact as to whether Defendants were unjustly enriched, the Court will grant Defendants' motion for summary judgment as to Count VI.

VI.     42 U.S.C. § 1983 and Municipal Liability (Count VII)

Plaintiffs asserted violations 42 U.S.C. § 1983 as a separate count in the complaint (Count III), but 42 U.S.C. § 1983 simply "provides the vehicle through which Plaintiff[s] must bring [their] constitutional challenges." *Inv. Realty Servs.*, 2020 WL 230272, at *4. Because the Court granted summary judgment on the fourth,

fifth, and fourteenth amendment claims underlying Plaintiffs' § 1983 claim, summary judgment is granted on Count III.

Similarly, Count VII of the complaint alleged municipal liability against Defendants. ECF 1, PgID 54. But municipal liability is not itself a cause of action, and it cannot be maintained "without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citation omitted). Because the Court has already granted Defendants' motion for summary judgment as to all the underlying constitutional claims, the municipal liability claim cannot be maintained. Summary judgment is granted on Count VII.

VII. <u>Declaratory and Injunctive Relief and Class Allegations (Counts I, II, VIII)</u>

Plaintiffs requested declaratory relief to state that the City's code ordinances are unconstitutional under the Fourth and Fourteenth Amendments (Count I) and an injunction "stopping Defendants from their illegal and unconstitutional practices" (Count II). ECF 1, PgID 38, 42. But "injunctive and declaratory relief are remedies and not independent causes of action." *Turaani v. Sessions*, 316 F. Supp. 3d 998, 1015 (E.D. Mich. 2018) (citation omitted); *Cruz v. Cap. One, N.A.*, 192 F. Supp. 3d 832, 838 (E.D. Mich. 2016). Moreover, the Court explained above that the City's ordinances are constitutional and Plaintiffs cannot establish a violation of their fourth, fifth, or fourteenth amendment rights. Because Plaintiffs cannot prevail on their

constitutional claims, they are not entitled to declaratory or injunctive relief. Summary judgment is thus granted on Counts I and II.

Last, the Court will grant summary judgment for Defendant as to Plaintiff's class allegations (Count VIII). Plaintiffs sought to certify a class of "all persons" subject to the same alleged constitutional violations alleged in the complaint. ECF 1, PgID 59–60. Plaintiffs lack standing to bring Fourth Amendment claims and thus may not represent a class. And Plaintiffs' remaining allegations lack merit. The Court will therefore grant Defendants' motion for summary judgment as to Count VIII.

## ORDER

The Court will grant Defendants' motion for summary judgment and deny Plaintiffs' motion for partial summary judgment. Specifically, as to Counts I and II of the complaint, the Court will grant summary judgment to Defendants because Plaintiffs cannot prevail on their constitutional claims and declaratory and injunctive relief are not independent causes of action. As to Count III, the Court will grant summary judgment to Defendants because Plaintiffs lack standing to bring a Fourth Amendment claim, Plaintiffs cannot succeed on their Fifth Amendment, and Plaintiffs cannot establish an equal protection violation. As to Counts IV and V, the Court will grant summary judgment to Defendants because Plaintiffs failed to show that the City's ordinances violated Plaintiffs' procedural due process rights. As to Count VI, the Court will grant summary judgment to Defendants because Plaintiffs failed to show that Defendants were unjustly enriched. The Court will also grant summary judgment to Defendants on Count VII because municipal liability, standing

alone is not a cause of action. And last, the Court will grant summary judgment to Defendants on Count VIII because no claims remain on which to certify a class. Defendant is thus entitled to summary judgment on each of Plaintiffs eight counts.

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion for summary judgment [19] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for summary judgment [20] is **DENIED**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: February 26, 2024